Good morning, your honors. May it please the court. Harini Raghupati on behalf of Ms. Camargo-Alejo. Ms. Camargo was charged with assaulting the officer in charge of Barracks 5, a trial she wanted to defend herself by having the jury hear that the officer in charge provoked her into a fight. From the moment she arrived at the facility, the officers targeted her because of who she was, singled her out for differential treatment, and then pushed her, excuse me, toward a steep flight of stairs. Because she proffered some evidence of both prongs of entrapment, government inducement, and lack of predisposition, the district court should have allowed the entrapment defense to go to the jury, and its failure to do so is reversible error. So one of the arguments the government makes is that even if you're right that the district court made a prong of inducement, there wasn't enough evidence of lack of predisposition in the record to get you an instruction. So if we assume that the only evidence you're allowed to rely on for that is evidence that was actually introduced at the trial, not what was discussed in the pretrial proffer, but what was actually introduced at the trial, what's your best case for sufficient evidence of lack of predisposition? So the facts that came before the jury in terms of predisposition, are you asking about the facts? I'm talking about what the jury heard. Okay, so the jury heard both and saw the video of Ms. Camargo prior to the assault, that she was seated in a chair leaning back with her arms shielding her from the sun, minding her own business. The officer in charge approached her and stood over her. The whole time there was testimony that Ms. Camargo didn't yell. Then the officer in charge was the one that initiated the conversation. She ordered Ms. Camargo to go inside the building, and Ms. Camargo with every order to a tee. So she was compliant during the initial course of her interaction with Agent Valdovinos. Then when she was separated from the other women detainees, taken into a building and surrounded by large male border patrol guards, and shoved toward a steep flight of stairs, that's when she reacted and swung agent toward Agent Valdovinos and assaulted her. And so I think that's reasonable, or that's some evidence from which the jury can her life. So if what we're limited to is what was actually introduced in front of the jury, all of the evidence of lack of predisposition comes from the same course of events, essentially. Correct. Okay, all right, thanks. And our position, of course, is that the district court made its decision. I think where the government and Ms. Camargo, where we disagree, is that the district court made its decision not only on the basis of the evidence seduced in the government's case-in-chief, but also on the basis of Ms. Camargo's pretrial proffer. And the 20 of the excerpts of record. And both parties in the district court make repeated references to the pretrial pleadings, which includes Ms. Camargo's proffer on predisposition and inducement. And both parties make repeated references to the evidence that's already in the record. And our position is that both parties in the district court were incorporating the pretrial proffer, and that here what happened was that the district court actually denied the defense, not just found there was insufficient evidentiary support for the defense. So you're not arguing that the court precluded the defendant from putting on that defense, because the court specifically said, I'm not going to prevent you from putting on the defense. We are arguing that the defense was denied. Now, it wasn't denied in limine. Why is that when the court not only said you can put on the defense, but I didn't see any indication or you didn't raise any indication that it prevented defendant from putting on whatever evidence of that defense that defendant wanted to? So I think that comes at pages 416 to 420. And the timing of this is important. And so what happened here was that during the government's case-in-chief, the government realized that if entrapment came to play, then it would have the burden to disprove or to prove Ms. Camargo was predisposed. So it wanted to call predisposition witnesses in its case-in-chief. It didn't want to run the risk of arresting Ms. Camargo, not presenting a defense, and then being foreclosed from raising predisposition at all. So it asked the district court to rule on entrapment during the case-in-chief. So that was the context that led to the timing. And then during the course of that discussion, defense counsel basically asked for the defense to, relying on the evidence that had already come out in the government's case-in-chief, as well as the evidence that had been proffered pretrial. So didn't the court ask if the defendant wanted to put on any additional evidence, and the defendant said no? Yes, Your Honor. But I think that the wording of that is important. So the court asked, does the defense want the court to consider any evidence that may come in prior to ruling, in the defense prior to ruling on this? And then defense counsel said, I think the evidence that's already in the record is sufficient. And our position is that by saying evidence that's already in the record, as opposed to evidence that's already in the government's case-in-chief, counsel was incorporating her pretrial proffer. How was the judge supposed to figure that out? Well, I think the judge did understand that, Your Honor, because the very next statement the judge made is that, on page 416 again, so the parties that both briefed the matter. So the district court itself was referring to the pretrial proffer and the briefing on the matter. I think at a minimum, however, this court has confronted a similar situation in a case we cited in the opening brief, United States v. Ibarra-Pino. And that is, excuse me, that is basically there the court said at 657 F. 3rd, 1000 Penn site, 1004. It was a case where the parties, again, like here, were disputing whether- You say this was in the opening brief? It was in the opening brief, Your Honor. This was a case where the parties were disputing whether the district court had denied a duress defense or whether the evidence of duress, but simply found there wasn't enough support to warrant the instruction. And the court there said at page 1004, the court believed, it appears the district court didn't preclude the duress defense prior to trial. But because there is some ambiguity in the district court's ruling, we will nevertheless construe it as a preclusion of the defense and determine whether the pretrial proffer plus the evidence of trial was sufficient to warrant the defense. And so essentially- But if you read on, it says, it goes on to say that the difference between the evidence at trial and the evidence presented at trial wasn't dispositive. That's correct, Your Honor. I mean, that's not really the same here, because you have a lot of stuff that was in the pretrial proffer that wasn't actually introduced in evidence at the trial. Well, I would dispute that it's a lot of stuff. I think the difference in terms of- Some stuff, sorry. A lot of some. Well, the difference in terms of inducement, I think, what didn't come out at trial was that Ms. Camargo was subjected to harassment and slurs based on her disability, that she wasn't given food on certain occasions, and that she wasn't given gender-appropriate undergarments. That, I think- But what did come out was that she was denied medical care, and this was in contrast to the other women detainees who were given medical care. She was held in solitary confinement and essentially isolation for the entire week leading up to the assault. She was singled out to wear a mask. No other women at the facility were made to wear masks. And then she was punished for not having a mask with her, and that punishment, of course, included essentially Agent Valdivino's physically assaulting Ms. Camargo as well. In the pretrial proffer, was there other evidence of lack of predisposition other than, again, the way she had responded to earlier events? Yes, Your Honor. Was there any independent evidence of, like, character or anything like that? Yes, Your Honor. Ms. Camargo had subpoenaed three witnesses. Two were detainees who were at the facility at the same time who were going to testify about her, basically, demeanor and interactions with the agents leading up to the event. And then there was also a woman named Ms. Angelique, who was essentially a very close family friend of Ms. Camargo's, who was proffered. She would testify that she had known Ms. Camargo since she was a young girl and that she was not prone to violence. I see that I have about 90 seconds left, if I may reserve the remainder of my time. Yes. Thank you. Good morning, Your Honors, and may it please the Court. Helen Hong on behalf of the United States. I'd like to start with the proposition that the district court denied Ms. Camargo the opportunity to present a defense. That just absolutely was not the case here. As Your Honor noted, during the in limine proceedings, the district court repeatedly stated that she was not going to deny the defendant the defense. The question about whether the entrapment instruction would be provided, the district court submitted, would be determined after hearing what evidence actually came out. But in terms of an opportunity to present a defense, that was never denied to Ms. Camargo at all. And we know that not only from the district court's remarks at the motion in limine hearing, but from the evidence that actually did come out. So the witnesses that Ms. Rogopathy just identified were actually ordered to appear at trial. The district court did not deny subpoenas for those other detainees at Barracks 5, nor did the district court deny the subpoena for Ms. Angelique. The district court, in fact, issued those subpoenas and ordered those witnesses to appear so that Ms. Camargo could, if she wanted to, attempt to pursue an entrapment defense. None of those witnesses were called at trial. And the subpoenas are at ER 601, 612 to 613, as well as 622. Those are the orders where the district court actually required the witnesses that Ms. Camargo had identified to appear. Ms. Camargo did identify and call three witnesses in her defense, none of whom were these three witnesses. If you look at the cross-examination of Agent Valdivenos, the victim in this case as well, there was substantial latitude where the district court allowed Ms. Camargo to get into or try to attempt to get into the conditions of her confinement. So there were questions, for example, about policies regarding transgender detainees in ER 327, housing for transgender detainees at ER 328, medical treatment of transgender detainees on the same page, hormone therapy at ER 330, and slurs or harassment that anyone would have directed towards Ms. Camargo. And the testimony there, of course, was that there were none, but that was at ER 331. When the district judge said in the part of the transcript that defense counsel quoted that, or when the defense lawyer said, I think that the evidence that's already in the record is sufficient to warrant a defensive entrapment. This is during the trial. And the judge says, all right. So the parties have both briefed the matter. Does anyone wish to address it further? So defense counsel basically said the trial attorney at that point was saying I'm relying on everything in the record and the district court essentially led her to believe that that was the case. What's your take on that? It's just not faithful to the record, Your Honor. The briefing that the district court was considering was mid-trial briefing that both parties had provided about the entrapment instruction. That appears at ER 510 to 513. That was the government submission. And then ER 515 to 517, which was Ms. Camargo's submission. I think Ms. Camargo's submission is the most telling. And what Ms. Camargo's submission during the trial, before the district court stated it had considered the briefing and was not, that briefing at ER 515 to 517 is entirely about what evidence at trial supported the slight evidence necessary to get the jury instruction. And so Ms. Camargo's attorneys wrote, for example, in this case, there is at a minimum slight evidence of inducement, if not more. And the only things that Ms. Camargo's attorneys identifies is the fact that Ms. Camargo was made to wear a face mask and that she was shoved. There was nothing about the conditions of confinement. There was nothing about hormone therapy. There was nothing about undergarments. There was nothing about slurs of course, because none of that was elicited at trial. But there was provocation here. She was treated or mistreated in this context. And I guess what I'm looking for is what's the dividing line? When is enough provocation enough to establish inducement? Well, there was no provocation in her treatment. What came out at trial from the four detainees that testified was that Ms. Camargo was treated very well. What came out at trial from the agent was that Ms. Camargo was treated consistent with policy towards transgender detainees and also treated very well. And so the suggestion that her conditions of confinement provoked her all comes from pretrial filings. It was a self-serving declaration that Ms. Camargo herself provided in connection with a motion to suppress. None of those facts were before the jury. The only facts that were before the jury that Ms. Camargo provided at trial to support the jury instruction was the fact that she felt that she had to wear a face mask when she wasn't sick and that she had endured a shove or a push inside the facilities after she was asked to leave when she became agitated and disruptive. Those facts together are insufficient as a matter of law to prove inducement or provocation that would stop the government from pursuing a prosecution for an assault on an officer. Ms. Camargo punched in effect to use excessive force in relation to the shove that was provided and therefore could not pursue a self-defense defense. What she is trying to do in light of that is suggest that even unreasonable applications of force in response to, for example, a shove is nonetheless excused because she was unhappy with the conditions of confinement. That simply is not the state of the law, nor is it what the Supreme Court envisioned in Sorrell's or in Sherman or in Jacobson when they were describing the entrapment defense. So in this case, I think the record is very clear that Ms. Camargo had an opportunity to present whatever defense she wanted. In fact, I think the district court went far beyond what it had to in giving latitude to Ms. Camargo to raise these sorts of issues before the jury. She was unable to do it with the witnesses that the government had produced. And when she was unable to do it, I think ultimately her attorneys made the strategic decision and strategic call not to present an entrapment defense because it would be in tension with and dilute the force of her other defense, which was, I didn't do it. It was either reflexive or I didn't actually hit and strike the agent. The Supreme Court in Matthews recognized that that is a tension and in most instances, defendants will not choose and elect to pursue both. While they technically can, I think in this case, Ms. Camargo's attorneys elected wisely not to do so because of the propensity evidence that the United States had indicated would come in against her. And that was propensity evidence involving a prior 2016 arrest where she resisted arrest and became combative as well as testimony from a detention facility officer at the MCC who would indicate that Ms. Camargo did not follow the rules and was not compliant. So for those reasons, we think that Ms. Camargo obviously had the opportunity to present a defense and that the district court did not abuse its discretion in determining that there was not even the slight evidence of inducement or lack of predisposition to support a jury instruction. Unless the court has any questions, the United States would submit. Thank you. Thank you, Your Honors. So I'd like to turn the court's attention to page 520 of the excerpts of record. I think that's the best evidence that the government itself in the heat of trial understood that the decision on entrapment was being made on the basis not just of the evidence in the case in chief, but also on the basis of Ms. Camargo's pre-trial proffer.    Ms. Camargo to make a proffer as to what evidence has been or will be offered to support an entrapment defense. I think that use of will be as important because it shows the government itself was recognizing that any evidence that was to come in in the forthcoming defense case was part of the analysis. Um, and the forthcoming defense case was the subject of Ms. Camargo's pretrial proffer. Then when the district court did not allow the defense, obviously she didn't put those witnesses on. And so, so I, I think that does support that, that it was the denial of a defense, not just simply Ms. Camargo electing to arrest the instruction on the basis of the government's case in chief. Um, as for the government's characterization on appeal of the evidence that actually came out at trial, it's not simply that Ms. Camargo was made to wear a face mask and push. I think the government really does minimize the evidence that came out at trial and takes a kind of divide and conquer approach. It's the fact that, again, as I mentioned, she was held in solitary confinement. She was denied medical care and there was evidence at trial that that was not how the other women at the facility were treated, um, that she was the only one she was singled out to wear the face mask. Um, and so it wasn't simply this issue of the face mask and a push. It was her differential treatment in comparison to all of the other women at trial. And of course the jury did hear that she was the only transgender woman at the facility at the time. So for those reasons, we would ask the court, uh, to vacate Ms. Camargo's conviction and remand for retrial. Thank you. We thank the parties for their argument. In the case of United States, the Camargo-Alejo is.
judges: O'scannlain, Ikuta, Kennelly